IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

    v.        No. 1:19-cr-3794-WJ

DAVID STEVENSON,

    Defendant.

## MEMORANDUM OPINION AND ORDER OVERRULING DEFENDANT'S OBJECTION TO PRESENTENCE REPORT PARAGRAPH 26

**THIS MATTER** is before the Court on Defendant's Objections to Presentence Report and Sentencing Memorandum [Doc. 28], filed April 17, 2020. Defendant contends that the United States has not established by a preponderance of the evidence that the two-offense level upward adjustment for obstruction of justice under U.S.S.G. § 3C1.2 applies in this case. The Court held a hearing on June 12, 2020 at which the United States offered testimony supporting application of the upward adjustment. Doc. 37 (Hearing Transcript). As explained in this opinion, the Court finds that Defendant's flight created a substantial risk of death or serious bodily injury to another person. Therefore, § 3C1.2 applies, and Defendant's objection is overruled.

### BACKGROUND

On September 12, 2019, Bernalillo County Sheriff's Deputy Mustafa Mudada was conducting traffic enforcement near a main entrance to the New Mexico State Fair. In an area with multiple lanes of continuous vehicular traffic, Deputy Mudada observed Defendant cross Central Avenue without using a crosswalk and engaged the emergency lights on his patrol unit. Defendant looked back but ignored the deputy's emergency equipment and continued walking. Deputy

Mudada testified that he was attempting to conduct a traffic stop for Defendant's violation of New Mexico state pedestrian safety law. Doc. 37 (Hearing Transcript) at 7-8. Deputy Mudada then engaged his air horn, whereupon Defendant dropped a plastic bag and fled on foot across four lanes of traffic. Deputy Mudada pursued Defendant on foot and tackled him in the roadway, but Defendant escaped custody and fled back across traffic. Deputy Mudada then performed a leveraged takedown on the opposite sidewalk and took Defendant into custody. Upon a search of Defendant's person, deputies discovered a 9mm Taurus handgun and ten rounds of 9mm ammunition. Doc. 26 (Presentence Investigation Report) at 4-5; Doc. 37 (Hearing Transcript) at 9-10. After Defendant was taken into custody, Deputy Mustafa learned that Defendant had prior felony convictions of Forgery, Receiving or Transferring a Stolen Vehicle, Residential Burglary, and Breaking and Entering. Doc. 26 (Presentence Investigation Report) at 5.

The United States charged Defendant with Felon in Possession of a Firearm and Ammunition in violation of 18 U.S.C. § 922(g)(1) and 18 U.S.C. § 924(a)(2). Doc. 1 (Criminal Complaint) at 1. Four months later, Defendant pleaded guilty and entered into a Rule 11(c)(1)(B) plea agreement. Doc. 24 (Plea Hearing Minutes); Doc. 23 (Plea Agreement).

The Presentence Investigation Report ("PSR") calculated Defendant's guideline imprisonment range to be 37 to 46 months based on a total offense level of 17 and a criminal history category of IV. Doc. 26 (PSR) at 27. Defendant's guideline offense level included a two-level upward adjustment for obstruction of justice, pursuant to U.S.S.G. § 3C1.2, because of Defendant's attempt to escape custody. *Id.*

## DISCUSSION

The adjustment for Reckless Endangerment During Flight states:

> If the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer, increase

by 2 levels.

U.S.S.G. § 3C1.2. For the purposes of the provision, "recklessly" means that "the defendant was aware of the risk created by his conduct and the risk was of such a nature and degree that to disregard that risk constituted a gross deviation from the standard of care that a reasonable person would exercise in such a situation." U.S.S.G. § 2A1.4. cmt. n.1. Notably, "the standard of care envisioned by the Guidelines is that of the reasonable person, not the reasonable fleeing criminal suspect." *United States v. Conley*, 131 F.3d 1387, 1389 (10th Cir. 1997).

The Tenth Circuit has not yet analyzed § 3C1.2 as applied to an on-foot pursuit through traffic; however, it has held that a "brief high-speed [car] chase qualifies for the reckless endangerment enhancement." *United States v. Gray*, 512 F. App'x 803, 807. Indeed, the "Tenth Circuit's precedent indicates that the most common cases where courts apply this guideline involve high-speed car chases." *United States v. Fichera*, No. CR 17-1369 JB, 2018 WL 5924391 at *3 (D.N.M. Nov. 13, 2019).

The Tenth Circuit has applied § 3C1.2 in other potentially dangerous situations beyond high-speed vehicle pursuits. One such situation involved an armed standoff following defendant's flight where he threatened to shoot police officers. *United States v. Young*, 893 F.3d 777, 780 (10th Cir. 2018). The Tenth Circuit has also affirmed the application of § 3C1.2 in cases where defendants recklessly dispose of firearms during flight. *See United States v. Brown*, 314 F.3d 1216, 1221 (10th Cir. 2003) (applying reckless endangerment enhancement to defendant who fled on foot and disposed of a gun in front of a school bus full of children); *United States v. Hampton*, 100 F.App'x. 792, 793-94 (10th Cir. 2004) (applying § 3C1.2 to defendant who fled on a bicycle, attempted to gain entry into an apartment, handed a loaded gun to the resident through the partially open door, and discarded empty bullet shells inside).

However, because the Tenth Circuit has never reviewed the application of § 3C1.2 to on-foot police pursuits across on-coming traffic, the Court looks to persuasive authority from other courts. At least three other circuits have applied § 3C1.2 to on-foot police pursuits across roadways. *See United States v. Reyes-Oseguera*, 106 F.3d 1481, 1481 (9th Cir. 1997) (finding that "defendant's flight on foot across three lanes of traffic on busy thoroughfare supported application of [§ 3C1.2] sentencing enhancement"); *see also United States v. Carter*, 146 F.3d 867 (5th Cir. 1998) (upholding application of § 3C1.2 to defendant who fled police on foot across four lanes of a major interstate and back again); *see also United States v. Atwood*, 761 F.App'x 651, 653-54 (7th Cir. 2019) (finding defendant's flight on-foot across eight lanes of expressway "could have caused serious bodily injury to others" and "qualifies him for the [§ 3C1.2] enhancement.").

Defendant argues that § 3C1.2 should not apply to on-foot flight because the adjustment "is most commonly applied to the dangerous flight using a vehicle due to the obvious danger involved when a vehicle is driven recklessly." *Id.* In *Reyes-Oseguera*, the Ninth Circuit rejected this exact argument, finding that the "danger to the motoring public posed by defendant's foot flight is of the same type created by their high-speed chase and is within the heartland of section 3C1.2." 106 F.3d at 1483 (citing *United States v. Torres-Lopez*, 13 F.3d 1308, 1312 (9th Cir.1994)). Simply because the Tenth Circuit has commonly reviewed the application of reckless endangerment enhancements to high-speed vehicle pursuits does not preclude applying § 3C1.2 to foot flight cases.

Defendant next argues that the United States has not presented sufficient evidence that U.S.S.G. § 3C1.2 applies to his on-foot flight from the Bernalillo County Sheriff's Deputies. He states that "[t]here is no evidence in discovery disclosed by the government specifically describing [the] number of cars on the roadway, speed of approaching vehicles, vehicle's distance away from

[Defendant] or the officer, or what evasive driving maneuvers were used by drivers to avoid striking [Defendant]." Doc. 28 (Defendant's Motion) at 5. However, this argument is unpersuasive in light of Deputy Mudada's testimony at Defendant's sentencing hearing, which detailed the circumstances surrounding Defendant's flight.

The Court finds that the United States has shown by a preponderance of the evidence that Defendant's on foot flight recklessly created a substantial risk of death or serious bodily injury to the pursuing officer and nearby motorists and, therefore, sentencing guideline § 3C1.2 applies. The arresting officer, Sheriff's Deputy Mudada, testified that Defendant fled across four lanes of medium to heavy traffic twice, nearly being struck by a vehicle. Doc. 37 (Hearing Transcript) at 8-11. One motorist had to "slam on her brakes to avoid hitting [Defendant]" and Deputy Mudada. *Id*. at 8. Mudada testified that there were at least three other vehicles in the area and that he was concerned about another motorist crashing into the first vehicle. *Id.* at 9-12. Moreover, Mudada testified that he was forced to conduct "a leveraged takedown right in the lanes of travel," prolonging the risk that he or another motorist could be struck by traffic. *Id.* at 10. The Court finds Deputy Mudadas's testimony to be very credible.

In the instant case, like in *Atwood*, Defendant's flight across traffic constitutes reckless endangerment "both because a pursuing trooper could be hit by a car and because other drivers would be at risk of a wreck." 761 F. App'x at 654 (7th Cir. 2019).

## CONCLUSION

For the foregoing reasons, the Court finds that Defendant's flight created a substantial risk of death or serious bodily injury to another person. Therefore, the two-offense level upward adjustment for obstruction of justice pursuant to U.S.S.G. § 3C1.2 was correctly applied, resulting in Defendant having a sentencing guideline offense level of 17 and a criminal history category of

IV. Accordingly, Defendant's objection to the PSR is overruled.

    **IT IS SO ORDERED**.

                                                **CHIEF UNITED STATES DISTRICT JUDGE**